**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **DR. CORNELIU BOLBOCEAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 6:19-CV-00465-ADA-JCM** |
| | § | |
| **BAYLOR UNIVERSITY,** | § | |
| | § | |
| **Defendant.** | § | |

---

**DEFENDANT BAYLOR UNIVERSITY'S FIRST AMENDED ANSWER**

---

Defendant Baylor University ("Baylor") files its First Amended Answer to Plaintiff Corneliu Bolbocean's Amended Complaint [Dkt. 27] (the "Complaint").

Following an investigation by Baylor's Title IX Office, Bolbocean, a 38-year old former assistant professor of economics at Baylor, was found responsible for violating Baylor's Title IX policy by engaging in non-consensual sexual penetration, sexual exploitation and intimate partner violence with a 21-year-old Baylor undergraduate student. Rather than accept responsibility for his reprehensible conduct, Bolbocean has accused his victim of making "false allegations" against him because he ended their relationship after he "caught" her "lying" to him. The fact is, however, that the victim ended her relationship with Bolbocean after he—on multiple occasions—made her engage in sexual conduct without her consent and was verbally abusive to her. Bolbocean is not the victim here.

In addition to blaming the real victim, Bolbocean also claims that the Title IX processes at Baylor are biased against men and that he was not afforded the same opportunity to participate in the investigation as the student. Again, nothing could be further from the truth. When the Title

IX investigator offered to meet with Bolbocean to hear his side of the story, Bolbocean refused unless the Title IX investigator submitted her questions to him in writing—ostensibly because of a language issue, although Bolbocean taught economics at Baylor in English and never requested a translator—and asserted a Fifth Amendment right to remain silent.  Bolbocean was provided multiple opportunities to tell his side of the story, and to present any exculpatory evidence, to the investigator and the Review Panel that ultimately affirmed the investigator's findings.  Bolbocean simply does not like the result of the investigation.  He has no claim under Title IX.

Finally, Bolbocean also suggests that he was forced to resign his position at Baylor just because of the Title IX proceeding.  The reality is that Bolbocean was headed towards dismissal, not only because of the Title IX proceeding, but also because he knowingly violated Baylor's policies, including the policy prohibiting relationships between professors and undergraduate students.  Contrary to Bolbocean's allegations, this policy applies equally to female and male professors at Baylor.  Rather than face certain dismissal from his department for his flagrant violation of policy, Bolbocean chose to resign to keep the whole affair private.  The end of his employment at Baylor was a direct result of Bolbocean's own choices, not discrimination by Baylor.  Bolbocean—not his victim, and not Baylor—is responsible for and needs to face the consequences of his actions.

## <u>NATURE OF THE CASE</u>

1.      Baylor admits that Bolbocean was employed as an Assistant Professor in Baylor's Department of Economics from August 10, 2015 until his resignation on November 12, 2018. Baylor denies the remaining allegations in Paragraph 1 of the Complaint.

2.      Baylor admits that, as part of the underlying Title IX investigation against him, Baylor's investigator found, as an undisputed fact, that Bolbocean and a female, undergraduate

Baylor student engaged in an intimate dating relationship.  Baylor further admits that the female student filed a complaint with Baylor's Title IX office alleging that Bolbocean sexually assaulted her. Baylor refers to that student as "Complainant" throughout this Answer to preserve her anonymity.  Baylor denies the remainder of the allegations in Paragraph 2 of the Complaint.

3.     Baylor  lacks sufficient information or knowledge to form a belief about the truth of the allegations in Paragraph 3 of the Complaint.

4.     Baylor denies the allegations in Paragraph 4 of the Complaint.

5.     Baylor admits that it found Bolbocean responsible for violating Baylor's Sexual and Gender-Based Harassment and Interpersonal Violence Policy for two acts of non-consensual sexual penetration, one act of sexual exploitation, and intimate partner violence.  Baylor denies the remaining allegations in Paragraph 5 of the Complaint.

6.     Baylor admits that it has been the subject of national media attention regarding its handling of complaints of sexual misconduct by students. Baylor denies the remaining allegations in Paragraph 6 of the Complaint.

7.     Baylor denies the allegations in Paragraph 7 of the Complaint.

8.     Baylor denies the allegations in Paragraph 8 of the Complaint.

9.     Baylor denies the allegations in Paragraph 9 of the Complaint.

10.    Baylor denies the allegations in Paragraph 10 of the Complaint.

11.    Baylor denies that Bolbocean was constructively discharged.  Baylor lacks sufficient information or knowledge to form a belief about the truth of the allegations in Paragraph 11 of the Complaint regarding Bolbocean's ability to find employment.

## PARTIES

12.     Baylor lacks sufficient information or knowledge to form a belief about the truth of the allegations in Paragraph 12 of the Complaint.

13.     Baylor admits that it is a private educational institution located in Waco, Texas.

## JURISDICTION

14.     Paragraph 14 of the Complaint contains jurisdictional allegations and not factual allegations that Baylor is required to admit or deny.   To the extent that Paragraph 14 of the Complaint contains allegations that Baylor, or any of its officers, directors, trustees, representatives, agents, servants, and employees engaged in illegal or unlawful conduct, or that Baylor authorized, approved or ratified such conduct, those allegations are denied.

15.     Paragraph 15 of the Complaint contains jurisdictional allegations and not factual allegations that Baylor is required to admit or deny.   To the extent that Paragraph 15 of the Complaint contains allegations that Baylor, or any of its officers, directors, trustees, representatives, agents, servants, and employees engaged in illegal or unlawful conduct, or that Baylor authorized, approved or ratified such conduct, those allegations are denied.

16.     Paragraph 16 of the Complaint contains conclusions of law, and not factual allegations that Baylor is required to admit or deny.   To the extent that Paragraph 16 of the Complaint contains allegations that Baylor, or any of its officers, directors, trustees, representatives, agents, servants, and employees engaged in illegal or unlawful conduct, or that Baylor authorized, approved or ratified such conduct, those allegations are denied.

## VENUE

17.     Baylor admits that venue is proper but denies that it engaged in any illegal or unlawful conduct that would support Bolbocean's claims.

## FACTUAL ALLEGATIONS

**A.     "Baylor's History Of Mishandling Title IX Claims"**[1]

Baylor denies that it has mishandled all Title IX complaints or failed to make meaningful and good faith attempts to comply with Title IX and the shifting guidance on its implementation over the years, as implied by the heading "Baylor's History of Mishandling Title IX Claims" of Section A under Factual Allegations in the Complaint.  In fact, by November 3, 2017, when the alleged incidents which form the basis of the Title IX complaint against Bolbocean occurred, Baylor had effectively implemented all of the 105 recommendations of Pepper Hamilton issued in May 2016 to improve Baylor's Title IX efforts.

18.     Baylor admits that it has been criticized for its handling of sexual assault allegations between 2012 to 2016 by certain female students against Baylor football players but denies that it failed to properly investigate those allegations in all instances.  Baylor denies the remaining allegations in Paragraph 18 of the Complaint.

19.     Baylor admits that it received criticism for the manner in which it responded to and handled the allegations referenced in Paragraph 18 of the Complaint.  Baylor denies the remaining allegations in Paragraph 19 of the Complaint.

20.     Baylor admits that the United States Department of Education Office for Civil Rights ("OCR") opened an investigation of Baylor on October 18, 2016.  Baylor denies the remaining allegations in Paragraph 20 of the Complaint.

21.     Baylor admits the allegations in Paragraph 21 of the Complaint.

---

[1] The section headings in the Complaint are quoted here for clarity and convenience only.  The inclusion of those headings in this First Amended Answer should not be construed as an admission by Baylor.  Any and all allegations contained in such headings are expressly denied.

22.     Baylor admits that in August 2015, Baylor retained the law firm of Pepper Hamilton to, among other things, conduct an independent and external review of Title IX issues through the lens of specific cases.  Baylor denies the remaining allegations in Paragraph 22 of the Complaint.

23.     Baylor admits that, following Pepper Hamilton's investigation, the Baylor Board of Regents released Findings of Fact in May 2016.  The findings speak for themselves and Baylor is not required to admit or deny Bolbocean's interpretation of those findings.   To the extent Bolbocean's description of the contents of the Findings of Fact in Paragraph 23 of the Complaint differs, varies, contradicts, or is inconsistent with the actual Findings of Fact themselves, Baylor denies Bolbocean's allegations.  Baylor further admits that, in May 2016, Pepper Hamilton made 105 recommendations to improve Baylor's Title IX efforts, which the Board adopted in its entirety, and that Baylor immediately initiated a coordinated, University-wide action plan to implement the recommendations.   Baylor denies that, apart from the 105 recommendations listed in Pepper Hamilton's "Report of External and Independent Review," there was a written "Pepper Hamilton Report."  Baylor denies the remaining allegations in Paragraph 23 of the Complaint.

24.     Baylor admits that, in May 2016, Pepper Hamilton made 105 recommendations to improve Baylor's Title IX efforts, which the Board adopted in its entirety, and that Baylor immediately initiated a coordinated, University-wide action plan to implement the recommendations.   Baylor denies that, apart from the 105 recommendations listed in Pepper Hamilton's "Report of External and Independent Review," there was a written "Pepper Hamilton Report."  Baylor denies the remaining allegations in Paragraph 24 of the Complaint.

25.     Baylor admits that, in May 2016, Pepper Hamilton made 105 recommendations to improve Baylor's Title IX efforts, including ensuring that appropriate resources were provided to victims of sexual assault.  Baylor further admits that the Board adopted the 105 recommendations

in their entirety, and immediately initiated a coordinated, University-wide action plan to implement the recommendations which were fully implemented by November 2017.

26.     Baylor admits that, following Pepper Hamilton's investigation, the Baylor Board of Regents released Findings of Fact in May 2016.  The findings speak for themselves and Baylor is not required to admit or deny Bolbocean's interpretation of those findings. To the extent Bolbocean's description of the contents of the Findings of Fact in Paragraph 26 of the Complaint differs, varies, contradicts, or is inconsistent with the actual Findings of Fact themselves, Baylor denies Bolbocean's allegations.

27.     Baylor admits that at least 11 female Baylor students have filed suits asserting Title IX claims against Baylor.  Baylor denies the remaining allegations in Paragraph 27 of the Complaint.

**B.     "Baylor Responds To Public Shaming and Pressure By Instituting A Culture of Anti-Male Bias"**

Baylor denies that it has instituted a culture of anti-male bias, as alleged in the heading of Section B of the Factual Allegations in the Complaint.

28.     Baylor admits that an article titled "Alumna to speak on sexual assault, hopes to open eyes" was published by the Baylor Lariat on April 10, 2013.  Baylor further admits that the article includes the quoted language from Dr. Jonathan Tran, an Associate Professor of Philosophical Theology at Baylor.  Baylor denies the remaining allegations in Paragraph 28 of the Complaint.

29.     Baylor admits that an article titled "Baylor implements new sexual assault prevention campaign" was published by the Baylor Lariat on September 6, 2013.  Baylor further admits that the article includes the following quote from Dr. Cheryl Wooten, a staff psychologist in the Baylor Counseling Center: "Assaults tend to happen on campuses where there are

stereotypical gender roles," Wooten said. "If they are strictly defined where men have more power in relationships, there will be an increase in number of sexual assaults."  Baylor denies that the word "they," which was removed and replaced with "[assaults]" in Paragraph 29 of the Complaint, refers to assaults; rather, "they" refers to the "gender roles" mentioned in the prior sentence.  To the extent Bolbocean's description of Wooten's statement differs, varies, contradicts or is inconsistent with Wooten's statement, Baylor denies the allegations in Paragraph 29 of the Complaint.

30.     Baylor admits that the article includes the language quoted in Paragraph 30 of the Complaint.

31.     Baylor admits that, on April 23, 2015, Baylor's Office of Community Engagement & Service and the Title IX office invited all males on campus for a community discussion on sexual assault prevention.

32.     Baylor admits that the guest speaker at the April 23, 2015 discussion, Ian McRary, a Title IX investigator at Baylor, talked about the policies and definitions under Title IX and educated male students on ways to prevent sexual assault.  Baylor denies the remaining allegations in Paragraph 32 of the Complaint.

33.     Baylor admits that the "It's On Us" website states that the program was launched in September 2014 following recommendations from the White House Task Force to Prevent Sexual Assault that noted the importance of calling everyone into the conversation on sexual assault prevention.  Baylor further admits that the "It's On Us" website states that "[t]he mission of It's On Us is to combat college sexual assault by engaging young men and changing campus culture.  We achieve our mission by teaching prevention, education, training the next generation of student organizers, and disseminating large-scale creative campaigns."  Baylor further admits

that the "It's On Us" website further states that "[o]ur prevention work is focused on three key areas: bystander intervention, consent education and survivor support."

34.     Baylor admits the allegations in Paragraph 34 of the Complaint.

35.     Baylor admits that It's On Us Baylor is a student organization  at Baylor and that Baylor supports the goals and purpose of It's On Us and It's On Us Baylor."  Baylor denies the remaining allegations in Paragraph 35 of the Complaint.

36.     Baylor admits that It's On Us Baylor launched an "It's On Us Pledge Drive" and that Baylor supported It's On Us Baylor in doing so.  Baylor denies the remaining allegations in Paragraph 36 of the Complaint.

37.     Baylor admits the allegations in Paragraph 37 of the Complaint.

38.     Baylor admits that it allows It's On Us Baylor to place certain posters on campus. Baylor denies the remaining allegations in Paragraph 38 of the Complaint.

39.     Baylor denies the allegations in Paragraph 39 of the Complaint.

40.     Baylor denies that It's On Us Baylor tweeted anything that advocated that rapists should be "castrated."  Baylor further denies that tweets on the It's On Us Baylor twitter page are statements of Baylor.

41.     Baylor denies that It's On Us at Baylor tweeted the statement in Paragraph 41 of the Complaint.  Baylor further denies that tweets on the It's On Us Baylor twitter page are statements of Baylor.

42.     Baylor admits the allegations in Paragraph 42 of the Complaint.

43.     Baylor admits that a January 28, 2019 article in the Waco Tribune-Herald, titled "Baylor's Men for Change confronts toxic masculinity, harmful stereotypes," states that Josh Ritter, Assistant Director of Spirituality and Public Life at Baylor, said Men for Change seeks to

shed light on sexual assault and toxic masculinity.  Baylor denies the remaining allegations in Paragraph 43 of the Complaint.

44.     Baylor admits that the January 28, 2019 article referenced in Paragraph 43 of the Complaint includes the statement from Ritter quoted in Paragraph 44 of the Complaint.

45.     Baylor admits that the January 28, 2019 article referenced in Paragraph 43 of the Complaint includes the statement from David Copeland, a Baylor employee who previously worked in the Department of Health, Human Performance, and Recreation, as quoted in Paragraph 45 of the Complaint.  Baylor denies the remaining allegations in Paragraph 45 of the Complaint.

46.     Baylor admits that Baylor's Office of Diversity and Inclusion hosted a THIS Matters forum on #MeToo.

47.     Baylor admits the THIS Matters forum on #MeToo was held in Barfield Drawing Room, one of the larger and most central venues on campus.

48.     Baylor admits that the THIS Matters forum included a panel comprised of members who spoke about, among other things, how Baylor can reform the "stigma and mentality surrounding sexual and interpersonal violence."  Baylor denies the remaining allegations in Paragraph 48 of the Complaint.

49.     Baylor admits that one of the panel members at the THIS Matters forum on #MeToo was Dr. Mito Diaz-Espinoza, program manager at the time for Baylor's First In Line Program.

50.     Baylor admits that a November 14, 2017 article in the Baylor Lariat regarding the THIS Matters forum on #MeToo contains the statement quoted in Paragraph 50 of the Complaint from Dr. Diaz-Espinoza.

51.    Baylor admits that a November 14, 2017 article in the Baylor Lariat regarding the THIS Matters forum on #MeToo contains the statement quoted in Paragraph 51 of the Complaint from Dr. Diaz-Espinoza.

52.    Baylor admits the allegation in Paragraph 52 of the Complaint.

53.    Baylor admits that faculty members, among other trainings, are required to complete online training on sexual violence, harassment, Title IX, and certain aspects of civil rights.  Baylor denies the remaining allegations in Paragraph 53 of the Complaint.

54.    Baylor denies the allegations in Paragraph 54 of the Complaint.

**C.    "Plaintiff's Superiors Confirm The Existence of Anti-Male Bias"**

Baylor denies that there is an anti-male bias at Baylor or that Bolbocean's superiors confirmed the existence of an anti-male bias, as alleged in the heading of Section C of the Factual Allegations in the Complaint.

55.    Baylor admits that Bolbocean placed something over the window of the door to his office in the fall of 2015.  Baylor lacks sufficient information or knowledge to form a belief about the truth of the remaining allegations in Paragraph 55 of the Complaint.

56.    Baylor admits that Bolbocean placed something over the window of the door to his office in the fall of 2015 and that Garner may have advised Bolbocean that, if he did so, Bolbocean should leave the door open when meeting with a student, male or female.  Baylor denies the remaining allegations in Paragraph 56 of the Complaint, including that Garner was Bolbocean's supervisor.

57.    Baylor denies the allegations in Paragraph 57 of the Complaint.

58.    Baylor admits that in August 2015, Baylor retained outside counsel Pepper Hamilton to, among other things, conduct an independent and external review of Title IX issues,

through the lens of specific cases.  Baylor denies the remaining allegations in Paragraph 58 of the Complaint.

59.     Baylor lacks sufficient information or knowledge to form a belief about the truth of the allegations in Paragraph 59 of the Complaint.

60.     Baylor lacks sufficient information or knowledge to form a belief about the truth of the allegations in Paragraph 60 of the Complaint at this time.  Baylor denies that Green was Bolbocean's supervisor.

61.     Baylor lacks sufficient information or knowledge to form a belief about the truth of the allegations in Paragraph 61 of the Complaint at this time.

62.     Baylor lacks sufficient information or knowledge to form a belief about the truth of the allegations in Paragraph 62 of the Complaint at this time.

63.     Baylor lacks sufficient information or knowledge to form a belief about the truth of the allegations in Paragraph 63 of the Complaint.

64.     Baylor lacks sufficient information or knowledge to form a belief about the truth of the allegations in Paragraph 64 of the Complaint at this time.

65.     Baylor lacks sufficient information or knowledge to form a belief about the truth of the allegations in Paragraph 65 of the Complaint at this time.

66.     Baylor admits the allegations in Paragraph 66 of the Complaint.

67.     Baylor denies the allegations Paragraph 67 of the Complaint as some instructors left before 5:00 p.m., and some left after 5:00 p.m., at various times.

68.     Baylor admits that Green was aware there was always a risk if a professor had a student (male or female) in his or her office with the door closed and the window covered in that

there would not be a third-party witness to the conversation.  Baylor denies the remaining allegations in Paragraph 68 of the Complaint.

69.     Baylor lacks sufficient information or knowledge to form a belief about the truth of the allegations in Paragraph 69 of the Complaint at this time.

70.     Baylor denies that Green told Bolbocean to follow a particular "protocol" as alleged in Paragraph 70 of the Complaint and further denies that female professors are held to a different standard than male professors in this regard.  Baylor denies the remaining allegations in Paragraph 70 of the Complaint.

71.     Baylor admits the allegations in Paragraph 71 of the Complaint.

72.     Baylor lacks sufficient information to admit or deny that Garner made this particular statement to Bolbocean.  Baylor admits that Garner believes that Baylor does not tolerate violence against women or men and denies any implication to the contrary in Paragraph 72 of the Complaint.

73.     Baylor denies the allegations in Paragraph 73 of the Complaint.

**D.     Plaintiff's Relationship With Complainant**

74.     Baylor admits that, as part of the underlying Title IX investigation against Bolbocean, both Bolbocean and Complainant reported that they met at Complainant's off-campus place of employment during the summer of 2017.

75.     Baylor admits that, as part of the underlying Title IX investigation against Bolbocean, both Bolbocean and Complainant reported that, while at Complainant's off-campus place of employment, Bolbocean invited Complainant to watch a sporting event at a restaurant that evening after Complainant was off work.

76.     Baylor admits that, as part of the underlying Title IX investigation against Bolbocean, Complainant reported that she joined Bolbocean that evening at the event.

77.     Baylor admits that, as part of the underlying Title IX investigation, both Bolbocean and Complainant reported that they went on dates.  Baylor lacks sufficient information or knowledge to form a belief about the precise number of dates Bolbocean and Complainant went on between November 2017 and January 2018.

78.     Baylor admits that, as part of the underlying Title IX investigation, Complainant reported that Bolbocean and Complainant engaged in one consensual sexual interaction between November 2017 and January 2018.

79.     During the underlying Title IX investigation against Bolbocean, Complainant denied any such conversation took place between Bolbocean and Complainant.  Because the Title IX investigator ultimately found Complainant to be more credible than Bolbocean, Baylor denies the allegations in Paragraph 79 of the Complaint.

80.     During the underlying Title IX investigation against Bolbocean, Complainant provided a different explanation for why Bolbocean and Complainant stopped seeing each other in February 2018 than Bolbocean describes in Paragraph 80 of the Complaint.  Because the Title IX investigator ultimately found Complainant to be more credible than Bolbocean, Baylor denies the allegations in Paragraph 80 of the Complaint.

81.     Baylor admits that, as part of the underlying Title IX investigation against Bolbocean, both Bolbocean and Complainant reported that they began dating again in March or April 2018.

82.     Baylor admits that, as part of the underlying Title IX investigation against Bolbocean, Complainant reported that she joined Bolbocean on a vacation in Utah on May 20, 2018.

83.     During the underlying Title IX investigation against Bolbocean, Complainant denied that Bolbocean stated his intention to end the relationship with Complainant and further denied that she lied to Bolbocean.  Because the Title IX investigator ultimately found Complainant to be more credible than Bolbocean, Baylor denies the allegations in Paragraph 83 of the Complaint.

84.     Baylor lacks sufficient information or knowledge to form a belief about the truth of the allegations in Paragraph 84 of the Complaint because the allegations lack a specific time frame.

85.     Baylor lacks sufficient information or knowledge to form a belief about the truth of the allegations in Paragraph 85 of the Complaint.

86.     Baylor admits that, as part of the underlying Title IX investigation against Bolbocean, Complainant and Bolbocean both reported that Complainant stayed at Bolbocean's home between May 22, 2018 and May 27, 2018, while she was waiting for her new lease to begin. Baylor lacks information or knowledge sufficient to form a belief about the remaining allegations in Paragraph 86 of the Complaint.

87.     Baylor admits that Complainant returned to Bolbocean's home on several occasions between May 22, 2018 and June 6, 2018.  Baylor lacks information or knowledge sufficient to form a belief about the remaining allegations in Paragraph 87 of the Complaint.

88.     During the underlying Title IX investigation against Bolbocean, Complainant denied that Bolbocean attempted to end their relationship on June 6, 2018 or that she lied to Bolbocean as described in Paragraph 88 of the Complaint.  Because the Title IX investigator

ultimately found Complainant to be more credible than Bolbocean, Baylor denies the allegations in Paragraph 88 of the Complaint.

89.     Baylor lacks sufficient information or knowledge to form a belief about the truth of the allegation in Paragraph 89 of the Complaint because the allegation lacks a specific time frame.

90.     Baylor admits that Complainant called Bolbocean on June 7, 2018.

91.     During the underlying Title IX investigation against Bolbocean, Complainant denied that Bolbocean said he wanted to end the relationship during the June phone call or that she had been untruthful to Complainant as described in Paragraph 91 of the Complaint.  Because the Title IX investigator ultimately found Complainant to be more credible than Bolbocean, Baylor denies the allegations in Paragraph 91 of the Complaint.

92.     Baylor admits that, during the underlying the Title IX investigation against Bolbocean, both Complainant and Bolbocean reported they argued during the June 2018 phone call.

93.     Baylor admits that, during the underlying Title IX investigation against him, Bolbocean reported that during the phone conversation between Complainant and Bolbocean in June 2018, Bolbocean hung up the phone after he and Complainant began to argue.  Baylor denies the remaining allegations in Paragraph 93 of the Complaint.

94.     Baylor admits that, following the Title IX investigation against Bolbocean, Baylor found Bolbocean responsible for violating Baylor's Sexual and Gender-Based Harassment and Interpersonal Violence Policy for two acts of non-consensual sexual penetration, one act of sexual exploitation, and intimate partner violence against Complainant.  Baylor therefore denies the allegations in Paragraph 94 of the Complaint.

E.   **"Baylor Encourages Complainant To File A Title IX Report And Exhibits Bias"**

Baylor denies that it exhibited bias against Bolbocean, as alleged in Section E of the Factual Allegations in the Complaint.

95.   Baylor admits that Complainant made a complaint to Baylor's Title IX Office regarding Bolbocean in June 2018.  Baylor denies the remaining allegations in Paragraph 95 of the Complaint.

96.   Baylor admits that the Baylor's Title IX Coordinator informed Complainant of all of her options with respect to pursuing a complaint against Bolbocean.  Baylor denies the remaining allegations in Paragraph 96 of the Complaint to the extent they imply that Johnson did anything improper in explaining Complainant's options to her.

97.   Baylor denies the allegations in Paragraph 97 of the Complaint.

98.   Baylor denies the allegations in Paragraph 98 of the Complaint.

99.   Baylor admits that Johnson told Complainant during her intake interview that she would not be a decisionmaker in the process and they were in the fact-gathering stage of the process.  Baylor admits that Complainant sent a text to a friend stating that she had been told that "even if I didn't have good evidence they wouldn't be in the position to doubt me I guess."

100.   Baylor denies the allegations in Paragraph 100 of the Complaint.

101.   Baylor denies the allegations in Paragraph 101 of the Complaint.

102.   Baylor admits that Johnson told Complainant something to this effect: even if Complainant had consensual sex with Bolbocean after the non-consensual sexual activity, that would not preclude Baylor from investigating the non-consensual sexual activity.  Baylor denies the remaining allegations in Paragraph 102 of the Complaint.

F.       **Timeline Of Title IX Process Related To Complainant's Allegations**

103.     Baylor admits the allegations in Paragraph 103 of the Complaint.

104.     Baylor admits the July 2, 2018 Notice of Investigation contained the above 4 allegations but denies that Paragraph 104 of the Complaint contains the entirety of the allegations as they were worded in the July 2 Notice.

105.     Baylor admits the allegations in Paragraph 105 of the Complaint.

106.     Baylor admits the allegations in Paragraph 106 of the Complaint.

107.     Baylor admits the allegations in Paragraph 107 of the Complaint.

108.     Baylor admits the allegations in Paragraph 108 of the Complaint.

109.     Baylor admits that, following the Title IX investigation against Bolbocean, Baylor found Bolbocean responsible for violating Baylor's Sexual and Gender-Based Harassment and Interpersonal Violence Policy for two acts of non-consensual sexual penetration, one act of sexual exploitation, and intimate partner violence against Complainant.  Ultimately, the Final Title IX Office Investigative Report speaks for itself and Baylor is not required to admit or deny Bolbocean's interpretation of that report.  To the extent Bolbocean's description of the contents of the report in Paragraph 109 of the Complaint differs, varies, contradicts or is inconsistent with the actual report, Baylor denies Bolbocean's allegations.

110.     Baylor admits that, following the Title IX investigation against Bolbocean, Baylor found Bolbocean responsible for violating Baylor's Sexual and Gender-Based Harassment and Interpersonal Violence Policy for two acts of non-consensual sexual penetration, one act of sexual exploitation, and intimate partner violence against Complainant.  Baylor further admits that, Baylor found Bolbocean not responsible for two allegations of sexual exploitation.  Ultimately, the Final Title IX Office Investigative Report speaks for itself and Baylor is not required to admit

or deny Bolbocean's interpretation of that report.  To the extent Bolbocean's description of the contents of the report in Paragraph 110 of the Complaint differs, varies, contradicts or is inconsistent with the actual report, Baylor denies Bolbocean's allegations.

111.    Baylor admits that a Title IX Review Panel Hearing was held on November 14, 2018.  Baylor denies the remaining allegations in Paragraph 111 of the Complaint.

112.    Baylor admits the allegations in Paragraph 112 of the Complaint.

113.    Baylor admits the allegations in Paragraph 113 of the Complaint.

**G.      "Charles North Admits The Bias In Baylor's Title IX Process and Hughes' Inability To Conduct A Fair and Competent Investigation"**

Baylor denies that its Title IX process is biased or that its investigator lacks ability to conduct a fair and competent investigation, as alleged in the heading of Section G of the Factual Allegations in the Complaint.  Baylor further denies that Charles North has personal knowledge of the underlying circumstances from which the allegations against Bolbocean arose, the details of the investigative procedures and processes utilized by Baylor to conduct its Title IX investigation, or the qualifications and competence of Hughes.

114.    Baylor denies the allegations in Paragraph 114 of the Complaint.

115.    Baylor denies the allegations in Paragraph 115 of the Complaint.

116.    Bolbocean may have surreptitiously recorded North during a conversation with Bolbocean in August 2018 and has provided what is purported to be a written transcript of the conversation, but Baylor has not yet been able to verify whether a conversation actually occurred or the accuracy of the purported transcript.  Ultimately, if an accurate transcript exists, the transcript speaks for itself and Baylor is not required to admit or deny Bolbocean's interpretation of what Dr. North said on that transcript.  To the extent Bolbocean's description of the contents of the purported transcript in Paragraph 116 of the Complaint differs, varies, contradicts or is

inconsistent with the transcript of that conversation, Baylor denies Bolbocean's allegations. Baylor further denies that North has personal knowledge of the underlying circumstances from which the allegations against Bolbocean arose or the details of the Title IX investigative procedures and processes utilized by Baylor to conduct its investigation, or the attitudes of Title IX personnel towards Bolbocean, including whether those personnel were biased. Any statements by North in his conversation with Bolbocean in this regard were based not on personal knowledge but on speculation. Baylor denies the remaining allegations in Paragraph 116 of the Complaint.

117. Bolbocean may have surreptitiously recorded North during a conversation with Bolbocean in August 2018 and has provided what is purported to be a written transcript of the conversation, but Baylor has not yet been able to verify whether a conversation actually occurred or the accuracy of the purported transcript. Ultimately, if an accurate transcript exists, the transcript speaks for itself and Baylor is not required to admit or deny Bolbocean's interpretation of what Dr. North said on that transcript. To the extent Bolbocean's description of the contents of the purported transcript in Paragraph 117 of the Complaint differs, varies, contradicts or is inconsistent with the transcript of that conversation, Baylor denies Bolbocean's allegations. Baylor further denies that North has personal knowledge of the underlying circumstances from which the allegations against Bolbocean arose or the details of the Title IX investigative procedures and processes utilized by Baylor to conduct its investigation into the allegations against Bolbocean or any other individual, or the attitudes of Title IX personnel towards Bolbocean or any other individual accused of a Title IX violation, including whether those personnel were biased. Any statements by North in his conversation with Bolbocean in this regard or about a "culture" at Baylor, if they occurred, were based not on personal knowledge but on speculation. Baylor denies the remaining allegations in Paragraph 117 of the Complaint.

118.     Baylor denies the allegations in Paragraph 118 of the Complaint.

119.     Bolbocean may have surreptitiously recorded North during a conversation with Bolbocean in August 2018 and has provided what is purported to be a written transcript of the conversation, but Baylor has not yet been able to verify whether a conversation actually occurred or the accuracy of the purported transcript.   Ultimately, if an accurate transcript exists, the transcript speaks for itself and Baylor is not required to admit or deny Bolbocean's interpretation of what Dr. North said on that transcript.   To the extent Bolbocean's description of the contents of the purported transcript in Paragraph 119 of the Complaint differs, varies, contradicts or is inconsistent with the transcript of that conversation, Baylor denies Bolbocean's allegations. Baylor further denies that North has personal knowledge of the underlying circumstances from which the allegations against Bolbocean arose or the details of the Title IX investigative procedures and processes utilized by Baylor to conduct its investigation into the allegations against Bolbocean or any other individual, or the attitudes of Title IX personnel towards Bolbocean or any other individual accused of a Title IX violation, including whether those personnel were biased. Any statements by North in his conversation with Bolbocean in this regard or about what Bolbocean needed to prove during a Title IX investigation, if they occurred, were based not on personal knowledge but on speculation.   Baylor denies the remaining allegations in Paragraph 119 of the Complaint.

120.     Bolbocean may have surreptitiously recorded North during a conversation with Bolbocean in August 2018 and has provided what is purported to be a written transcript of the conversation, but Baylor has not yet been able to verify whether a conversation actually occurred or the accuracy of the purported transcript.   Ultimately, if an accurate transcript exists, the transcript speaks for itself and Baylor is not required to admit or deny Bolbocean's interpretation

of what Dr. North said on that transcript.  To the extent Bolbocean's description of the contents of the purported transcript in Paragraph 120 of the Complaint differs, varies, contradicts or is inconsistent with the transcript of that conversation, Baylor denies Bolbocean's allegations. Baylor further denies that North has personal knowledge of the underlying circumstances from which the allegations against Bolbocean arose or the details of the Title IX investigative procedures and processes utilized by Baylor to conduct its investigation into the allegations against Bolbocean or any other individual, or the attitudes of Title IX personnel towards Bolbocean or any other individual accused of a Title IX violation, including whether those personnel were biased. Any statements by North in his conversation with Bolbocean in this regard or about whether a male professor accused by a female student would be considered guilty until proven innocent, if they occurred, were based not on personal knowledge but on speculation.  Baylor denies the remaining allegations in Paragraph 120 of the Complaint.

121.    Baylor denies the allegations in Paragraph 121 of the Complaint.

122.    Baylor denies the allegations in Paragraph 122 of the Complaint.

123.    Bolbocean may have surreptitiously recorded North during a conversation with Bolbocean in August 2018 and has provided what is purported to be a written transcript of the conversation, but Baylor has not yet been able to verify whether a conversation actually occurred or the accuracy of the purported transcript.  Ultimately, if an accurate transcript exists, the transcript speaks for itself and Baylor is not required to admit or deny Bolbocean's interpretation of what Dr. North said on that transcript.  To the extent Bolbocean's description of the contents of the purported transcript in Paragraph 123 of the Complaint differs, varies, contradicts or is inconsistent with the transcript of that conversation, Baylor denies Bolbocean's allegations. Baylor further denies that North has personal knowledge of the underlying circumstances from

which the allegations against Bolbocean arose; the details of the Title IX investigative procedures and processes utilized by Baylor to conduct its investigation into the allegations against Bolbocean or any other individual; the attitudes of Title IX personnel towards Bolbocean or any other individual accused of a Title IX violation, including whether those personnel were biased; or the qualifications, skill and training of Hughes to conduct such a Title IX investigation.   Any statements by North in his conversation with Bolbocean in this regard or about Hughes' skill, training and background were based not on personal knowledge but on speculation.  Baylor denies the remaining allegations in Paragraph 123 of the Complaint.

### H.    "Baylor's Investigation And Adjudication Of Complainant's Allegations Were Impermissibly Biased And Reached The Incorrect Conclusion"

Baylor denies that its investigation or adjudication of Complainant's allegations were biased or that it reached the incorrect conclusion, as alleged in Section H of the Factual Allegations in the Complaint.

124.    Baylor denies the allegations in Paragraph 124 of the Complaint.

125.    Baylor denies the allegations in Paragraph 125 of the Complaint.

126.    Baylor denies the allegations in Paragraph 126 of the Complaint.

127.    Baylor denies the allegations in Paragraph 127 of the Complaint.

128.    Baylor denies the allegations in Paragraph 128 of the Complaint.

129.    Baylor denies the allegations in Paragraph 129 of the Complaint.

130.    Baylor denies the allegations in Paragraph 130 of the Complaint.

131.    Baylor denies the allegations in Paragraph 131 of the Complaint.

132.    Baylor denies the allegations in Paragraph 132 of the Complaint.

133.    Baylor denies the allegations in Paragraph 133 of the Complaint.

134.    Baylor denies the allegations in Paragraph 134 of the Complaint.

135. Baylor denies the allegations in Paragraph 135 of the Complaint.

**I.    "Baylor Failed To Provide Timely And Equal Access To Information"**

Baylor denies that it failed to provide timely and equal access to information to Bolbocean, as alleged in Section I of the Factual Allegations in the Complaint.

136. Baylor admits that its Sexual and Gender-Based Harassment and Interpersonal Violence Policy ("SGBH Policy") contains the statement quoted in Paragraph 136 of the Complaint.

137. Baylor admits that Bolbocean requested the notes from Complainant's intake meeting after the investigation was over and after the Review Panel had affirmed the investigator's findings. Baylor denies the remaining allegations in Paragraph 137 of the Complaint.

138. Baylor admits the allegations in Paragraph 138 of the Complaint.

139. Baylor denies the allegations in Paragraph 139 of the Complaint.

140. Baylor admits that Bolbocean was not provided with the Title IX Office Intake/Checklist Form that contained notes from Complainant's intake meeting with Title IX. Baylor denies the remaining allegations in Paragraph 140 of the Complaint.

141. Baylor denies the allegations in Paragraph 141 of the Complaint.

142. Baylor admits the allegations in Paragraph 142 of the Complaint.

143. Baylor denies the allegations in Paragraph 143 of the Complaint.

144. Baylor denies the allegations in Paragraph 144 of the Complaint.

145. Paragraph 145 of the Complaint does not contain factual allegations which Baylor is required to admit or deny.

146. Baylor admits that it did not provide Bolbocean with a copy of Title IX Office Intake/Checklist Form that contained notes from Complainant's intake meeting with Title IX.

147.    Baylor denies the allegations in Paragraph 147 of the Complaint.

**J.      "Baylor Failed To Equally Assess The Evidence"**

Baylor denies the allegation that Baylor failed to equally assess the evidence, as alleged in Section J of the Factual Allegations in the Complaint.

148.    Baylor admits the SGBH Policy contains the language quoted in Paragraph 148 of the Complaint.

149.    Baylor denies the allegations in Paragraph 149 of the Complaint.

150.    Baylor denies the allegations in Paragraph 150 of the Complaint.

151.    Baylor denies the allegations in Paragraph 151 of the Complaint.

152.    Baylor denies the allegations in Paragraph 152 of the Complaint.

153.    Baylor denies the allegations in Paragraph 153 of the Complaint.

154.    Baylor denies the allegations in Paragraph 154 of the Complaint.

155.    Baylor denies the allegations in Paragraph 155 of the Complaint.

156.    Baylor denies the allegations in Paragraph 156 of the Complaint.

157.    Baylor denies the allegations in Paragraph 157 of the Complaint.

158.    Baylor admits that Complainant communicated with Cruz on June 7, more than a week after the alleged assault.

159.    Baylor denies the allegations in Paragraph 159 of the Complaint.

160.    Baylor denies the allegations in Paragraph 160 of the Complaint.

161.    Baylor denies the allegations in Paragraph 161 of the Complaint.

162.    Paragraph 162 of the Complaint requests Baylor to admit or deny something reflected on Complainant's bank statement.  Complainant's bank statement speaks for itself and to the extent Bolbocean's description of what is contained in the bank statement differs, contradicts

or is inconsistent with the statement, Baylor denies the allegations in Paragraph 162 of the Complaint.

163.     Baylor denies the allegations in Paragraph 163 of the Complaint.

164.     Baylor admits that, during the Title IX investigation against Bolbocean, Complainant alleged that Bolbocean ejaculated in her without her consent twice between May 22 to May 27 and that she purchased emergency contraception as a result.   Baylor denies the remaining allegations in Paragraph 164 of the Complaint.

165.     Baylor denies the remaining allegations in Paragraph 165 of the Complaint.

166.     Baylor admits that Complainant texted Cruz on June 2, 2018 that she was attempting to return a Plan B.

167.     Baylor denies the allegations in Paragraph 167 of the Complaint.

168.     Baylor admits that Hughes found Bolbocean responsible for non-consensual sexual penetration that occurred in Utah on May 20.   To the extent Bolbocean alleges in Paragraph 168 of the Complaint that Hughes did not consider all of the evidence presented in making the final determination of responsibility, Baylor denies those allegations.

169.     Baylor admits that Hughes found Bolbocean responsible for a second act of non-consensual penetration.   Baylor denies the remaining allegations in Paragraph 169 of the Complaint.

170.     Baylor admits that Hughes found Bolbocean responsible for sexual exploitation. Baylor denies the remaining allegations in Paragraph 170 of the Complaint.

171.     Baylor admits that Hughes found Bolbocean responsible for intimate partner violence.  Baylor denies the remaining allegations in Paragraph 171 of the Complaint.

172.    Baylor admits that Hughes found Bolbocean responsible for intimate partner violence.  Baylor denies the remaining allegations in Paragraph 172 of the Complaint.  The SGBH Policy provides that "[i]ntimate partner violence may include any form of prohibited conduct under this policy, including sexual assault, stalking, and physical abuse."

173.    Baylor denies the allegations in Paragraph 173 of the Complaint.

174.    Baylor denies the allegations in Paragraph 174.

175.    Baylor denies that  Hughes failed to properly  consider and weigh all of the evidence presented during the investigation.  Hughes considered all of the information provided to her from all sources, including from Bolbocean and Complainant.  Baylor denies the allegations in Paragraph 175 of the Complaint.

176.    Baylor denies that Hughes failed to properly  consider and weigh all of the evidence presented during the investigation.  Hughes considered all of the information provided to her from all sources, including from Bolbocean and Complainant.  Baylor denies the allegations in Paragraph 176 of the Complaint.

177.    Baylor denies the allegations in Paragraph 177 of the Complaint.

178.    Baylor denies that Bolbocean sought to submit such evidence to Hughes or the Title IX Office during the investigation.  Baylor admits that, contrary to the SGBH Policy, Bolbocean sought to submit new photographic evidence during the Review Panel hearing that was considered by the Review Panel and found to be cumulative of information already considered and factored into Hughes' analysis of whether or not Complainant had been coerced.

179.    Baylor denies the allegations in Paragraph 179 of the Complaint.

K.     "Baylor's Faulty Credibility Determinations"

Baylor denies that it made faulty credibility determinations as part of the underlying Title IX investigation as alleged in Section K of the Factual Allegations in the Complaint.

180.    Baylor admits the allegations in Paragraph 180 of the Complaint.

181.    Baylor denies the allegations in Paragraph 181 of the Complaint.

182.    Baylor denies the allegations in Paragraph 182 of the Complaint.

183.    Baylor admits that Hughes stated that Complainant provided specific details that made Complainant's statements more credible.  Baylor denies that Paragraph 183 of the Complaint offers a complete explanation of Hughes' analysis of the credibility of Bolbocean and Complainant and denies the remaining allegations in the Complaint.

184.    Baylor denies the allegations in Paragraph 184 of the Complaint.

185.    Baylor denies the allegations in Paragraph 185 of the Complaint.

186.    Baylor admits that Complainant could not identify the precise date between May 22 and 27, 2018 when the second alleged instance of sexual assault occurred.

187.    Baylor denies that Bolbocean was required to "offer details" or that Baylor failed to give Bolbocean the opportunity to provide his response to the allegations as part of the underlying Title IX investigation.  Bolbocean was offered the opportunity to be interviewed by Hughes but declined to participate in such an interview.

188.    Baylor denies that a "negative credibility finding" was "imputed" against Bolbocean because of any failure of Bolbocean to "offer details."  Baylor denies the allegations in Paragraph 188 of the Complaint.

189.    Baylor denies the allegations in Paragraph 189 of the Complaint.

190.     Baylor denies that Hughes was "confronted by the Title IX Review Panel."  Baylor admits that Hughes made the following statement to the Review Panel at the November 14 hearing: "And although [the Policy] doesn't give a definition of coercion for me to exactly line up with, for me, what I relied on was the fact that on page nine when talking about consent the Policy says, 'In evaluating whether consent has been freely sought and given, the university will consider the presence of any force, threat of force, or coercion.'  So for me the Policy makes this clear distinction that there are things like the actual use of force, the threat of force, or coercion that could impact whether or not consent was freely given.  And by delineating those three things, and making force and coercion separate things that are addressed in the Policy, to me I did not feel that force or the threat of force was a necessary component to find that coercion existed.  So that was why I drew that distinction of feeling that the back and forth between them was coercive in nature."

191.     Baylor denies the allegations in Paragraph 191 of the Complaint.

192.     Baylor denies the allegations in Paragraph 192 of the Complaint.

193.     Baylor admits that Hughes concluded that Complainant's lack of engagement supported a finding of lack of consent.  Baylor denies the remaining allegations in Paragraph 193 of the Complaint.

194.     Baylor denies the allegations in Paragraph 194 of the Complaint.

195.     Baylor denies the allegations in Paragraph 195 of the Complaint.

196.     Baylor admits that Hughes found that, when viewed as a whole, the facts appeared to support Complainant's credibility and cast doubt on Bolbocean's credibility.  Baylor denies the remaining allegations in Paragraph 196 of the Complaint.

197.     Baylor denies the allegations in Paragraph 197 of the Complaint.

198.     Baylor denies the allegations in Paragraph 198 of the Complaint.

199.    Baylor denies the allegations in Paragraph 199 of the Complaint.

200.    Baylor denies the allegations in Paragraph 200 of the Complaint.

**L.    "Baylor Denies Plaintiff The Equal Right To Participate In The Title IX Process"**

Baylor denies that it denied Bolbocean the equal right to participate in the Title IX process, as alleged in Section I of the Factual Allegations in the Complaint.

201.    Baylor admits the allegations in Paragraph 201 of the Complaint.

202.    Baylor denies the allegations in Paragraph 202 of the Complaint.

203.    Baylor lacks knowledge or information sufficient to form a belief about the truth of the allegation in Paragraph 203 of the Complaint.

204.    Baylor admits that Bolbocean was a professor in economics and taught his classes in English at Baylor.  Baylor lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 204 of the Complaint.

205.    Baylor admits that Bolbocean requested that Hughes submit her questions during the underlying Title IX investigation to him in writing and that at one point, he asked to be allowed to respond to those questions in writing because of professed concerns about a language barrier. Baylor further admits, however, that Bolbocean informed the Title IX investigator that he was capable of communicating in English.  Baylor denies that Bolbocean ever requested to have a translator present for an oral interview.  Baylor denies the remaining allegations in Paragraph 205 of the Complaint.

206.    Baylor admits that Bolbocean sent a letter to the Title IX office stating: "I reserve the right to remain silent as such is guaranteed under the Fifth Amendment of the United States Constitution and the laws of the State of Texas.  This means I will not answer any questions related

to these false allegations."  Bolbocean later refused to participate in an interview with Hughes unless Hughes submitted questions in writing and allowed Bolbocean to respond in writing.

207.    Baylor admits that Hughes refused to conduct Bolbocean's interview in writing because she could not effectively present all of her questions for him in a written format.  Baylor denies the remaining allegations in Paragraph 207 of the Complaint.

208.    Baylor denies the allegations in Paragraph 208 of the Complaint.  The Final Investigative Report states only that Bolbocean "elected not to share his account with Investigator" and that Hughes "draws no adverse inference from Respondent's election to not participate in the preliminary investigation."

209.    Baylor denies the allegations in Paragraph 209 of the Complaint.

210.    Baylor admits the allegations in Paragraph 210 of the Complaint.

211.    Baylor admits that Complainant did not request any language accommodations.

212.    Baylor denies the allegations in Paragraph 212 of the Complaint.

213.    Baylor admits that the members of the Review Panel were female.

214.    Baylor denies the allegations in Paragraph 214 of the Complaint.

**M.    "Baylor's Failure To Conduct A Fair And Impartial Investigation"**

Baylor denies that it failed to conduct a fair and impartial investigation, as alleged in Section M of the Factual Allegations in the Complaint.

215.    Baylor admits the allegations in Paragraph 215 of the Complaint.

216.    Baylor denies the allegations in Paragraph 216 of the Complaint.

217.    Baylor denies the allegations in Paragraph 217 of the Complaint.

218.    Bolbocean may have surreptitiously recorded North during a conversation with Bolbocean in August 2018 and has provided what is purported to be a written transcript of the

conversation but Baylor has not yet been able to verify whether a conversation actually occurred or the accuracy of the purported transcript.  Ultimately, if an accurate transcript exists, the transcript speaks for itself and Baylor is not required to admit or deny Bolbocean's interpretation of what Dr. North said on that transcript.  To the extent Bolbocean's description of the contents of the purported transcript in Paragraph 218 of the Complaint differs, varies, contradicts or is inconsistent with the transcript of that conversation, Baylor denies Bolbocean's allegations. Baylor further denies that North has personal knowledge of the underlying circumstances from which the allegations against Bolbocean arose; the details of the Title IX investigative procedures and processes utilized by Baylor to conduct its investigation into the allegations against Bolbocean or any other individual; or the attitudes of Title IX personnel towards Bolbocean or any other individual accused of a Title IX violation, including whether those personnel were biased.  Any statements by North in his conversation with Bolbocean in this regard were based not on personal knowledge but on speculation.  Baylor denies the remaining allegations in Paragraph 218 of the Complaint.

219.    Baylor denies the allegations in Paragraph 219 of the Complaint.

220.    Baylor admits that, in July 2018, Dr. North provided Bolbocean with a link to certain Baylor policies (BUPP 022, 705 and 719) and encouraged him to review those policies. Baylor denies the remaining allegations in Paragraph 220 of the Complaint.

221.    Baylor denies the allegations in Paragraph 221 of the Complaint.

222.    Baylor denies the allegations in Paragraph 222 of the Complaint.

223.    Baylor admits that Hughes sent Bolbocean written questions on two discrete issues related to the investigation.  Baylor otherwise denies the allegations in Paragraph 223 of the Complaint.

224.     Baylor denies the allegations in Paragraph 224 of the Complaint.

225.     Baylor denies the allegations in Paragraph 225 of the Complaint.

226.     Baylor admits that Hughes asked North whether Bolbocean's trip to Utah was for a Baylor purpose, such as a conference or research.  North subsequently confirmed that the economics department did not have any record of department-reimbursed travel for Bolbocean in May 2018.  Baylor denies the remaining allegations in Paragraph 226 of the Complaint.

227.     Baylor admits that Hughes asked Bolbocean about what he knew about Complainant's education status, including what Complainant told him about her status.  Baylor denies the remaining allegations in Paragraph 227 of the Complaint.

228.     Baylor denies the allegations in Paragraph 228 of the Complaint.

229.     Baylor denies the allegations in Paragraph 229 of the Complaint.

230.     Baylor denies the allegations in Paragraph 230 of the Complaint.

231.     Baylor denies the allegations in Paragraph 231 of the Complaint.

232.     Baylor admits the allegations in Paragraph 232 of the Complaint.

233.     Baylor denies the allegations in Paragraph 233 of the Complaint.

234.     Baylor denies the allegations in Paragraph 234 of the Complaint.

235.     Baylor denies the allegations in Paragraph 235 of the Complaint.

236.     Baylor denies the allegations in Paragraph 236 of the Complaint.

237.     Baylor lacks sufficient information or knowledge to form a belief about the truth of the allegations in Paragraph 237 of the Complaint.  Baylor denies that Morie engaged in any inappropriate behavior during the Review Panel hearing on November 14.

238.    Baylor lacks sufficient information or knowledge to form a belief about the truth of the allegations in Paragraph 238 of the Complaint.  Baylor denies that Morie engaged in any inappropriate behavior during the Review Panel hearing on November 14.

239.    Baylor admits that Bolbocean came to the Title IX office to transcribe the report verbatim and complained that he did not have enough time with the report with the restrictions on availability.  Baylor further admits that it subsequently provided Bolbocean with access to the report for a full 24-hours via Box in a read-only format.  Baylor denies the remaining allegations in Paragraph 239 of the Complaint.

240.    Baylor lacks sufficient information or knowledge to form a belief about the truth of the allegations in Paragraph 240 of the Complaint.  Baylor denies that Johnson engaged in any inappropriate behavior.

241.    Baylor denies the allegations in Paragraph 241 of the Complaint.

242.    Baylor admits that, on November 12, 2018, Dr. North discussed with Bolbocean his options following the completion of the Title IX investigation and prior to the Review Panel hearing on November 14, 2018.  Baylor further admits that Dr. North informed Bolbocean that, regardless of the outcome of the Title IX proceeding, he had determined that the department would be initiating dismissal proceedings against Bolbocean as a result of Bolbocean's violation of Baylor's policy prohibiting a faculty member from engaging in a relationship with an undergraduate student.  Baylor further admits that Dr. North advised Bolbocean that, if he wanted to avoid that process, he may want to consider resignation.  Baylor denies the remaining allegations in Paragraph 242 of the Complaint.

243.    Baylor admits that the Review Panel Hearing was scheduled to occur on November 14, 2018.  Baylor denies the remaining allegations in Paragraph 243 of the Complaint.

244.    Baylor admits that, two days prior to the Title IX Review Panel hearing, Dr. North was certain that the department would be initiating dismissal proceedings against Bolbocean as a result of, among other potential violations of Baylor policy, Bolbocean's violation of Baylor's policy prohibiting a faculty member from engaging in a relationship with an undergraduate student.  Baylor denies the remaining allegations in Paragraph 244 of the Complaint.

245.    Baylor denies the allegations in Paragraph 245 of the Complaint.

246.    Baylor admits that, on November 12, 2018, Dr. North sent an email to Bolbocean in which he stated "I am sorry that you are resigning, but under the circumstances I understand." Baylor denies the remaining allegations in Paragraph 246 of the Complaint.

247.    Baylor denies the allegations in Paragraph 247 of the Complaint.

248.    Baylor admits that it informed Respondent that Baylor would not disclose documents related to the Title IX investigation, adjudication and hearing except where authorized or required by law.  Baylor denies the remaining allegations in Paragraph 248 of the Complaint.

249.    Baylor denies the allegations in Paragraph 249 of the Complaint.

250.    Baylor denies the allegations in Paragraph 250 of the Complaint.

### FIRST CAUSE OF ACTION:
### (VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 – ERRONEOUS OUTCOME)

251.    Baylor incorporates by reference its responses to Paragraphs 1 through 250 as if fully set forth herein.

252.    Paragraph 252 of the Complaint does not contain any factual allegations which Baylor is required to admit or deny.

253.    Paragraph 253 of the Complaint does not contain any factual allegations which Baylor is required to admit or deny.

254.    Baylor admits that it receives federal funding.

255.     Paragraph 255 of the Complaint, which is Bolbocean's characterization of Title IX, does not contain any factual allegations that Baylor is required to admit or deny.

256.     Paragraph 256 of the Complaint, which is Bolbocean's characterization of the requirements of Title IX, does not contain any factual allegations that Baylor is required to admit or deny.

257.     Paragraph 257 of the Complaint, which is Bolbocean's characterization of the requirements of Title IX, does not contain any factual allegations that Baylor is required to admit or deny.

258.     Baylor denies the allegations in Paragraph 258 of the Complaint.

259.     Paragraph 259 of the Complaint, which is Bolbocean's characterization of the requirements of Title IX, does not contain any factual allegations that Baylor is required to admit or deny.

260.     Paragraph 260 of the Complaint, which is Bolbocean's characterization of some cases, does not contain any factual allegations that Baylor is required to admit or deny.

261.     Baylor denies the allegations in Paragraph 261 of the Complaint.

262.     Paragraph 262 of the Complaint does not contain any factual allegations that Baylor is required to admit or deny.  Baylor, however, denies that there were evidentiary weaknesses, procedural flaws, or that an erroneous outcome was reached.

263.     Baylor denies the allegations in Paragraph 263 of the Complaint.

264.     Baylor denies the allegations in Paragraph 264 of the Complaint.

265.     Baylor denies the allegations in Paragraph 265 of the Complaint.

266.     Baylor denies the allegations in Paragraph 266 of the Complaint.

267.     Baylor denies the allegations in Paragraph 267 of the Complaint.

268.    Baylor denies the allegations in Paragraph 268 of the Complaint.

269.    Baylor denies the allegations in Paragraph 269 of the Complaint.

270.    Baylor denies the allegations in Paragraph 270 of the Complaint.

271.    Baylor denies the allegations in Paragraph 271 of the Complaint.

272.    Baylor denies the allegations in Paragraph 272 of the Complaint.

273.    Baylor denies the allegations in Paragraph 273 of the Complaint.

274.    Baylor admits that the Title IX investigator found Complainant to be credible. Baylor denies the remaining allegations in Paragraph 274 of the Complaint.

275.    Baylor admits that the Title IX investigator found Complainant to be credible. Baylor denies the remaining allegations in Paragraph 275 of the Complaint.

276.    Baylor admits that the Title IX investigator found Complainant to be credible. Baylor denies the remaining allegations in Paragraph 276 of the Complaint.

277.    Baylor admits that it found Bolbocean responsible for violating Baylor's Sexual and Gender-Based Harassment and Interpersonal Violence Policy for non-consensual sexual penetration on two occasions, sexual exploitation on one occasion, and intimate partner violence. Baylor denies the remaining allegations in Paragraph 277 of the Complaint.

278.    Baylor denies that Bolbocean is entitled to any of the relief requested.

## SECOND CAUSE OF ACTION:
### (VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964)

279.    Baylor incorporates by reference its responses to Paragraphs 1 through 278 as if fully set forth herein.

280.    Paragraph 280 of the Complaint is a legal conclusion, and not a factual allegation that Baylor is required to admit or deny.

281.    Baylor denies the allegations in Paragraph 281 of the Complaint.

282.    Paragraph 282 of the Complaint is a legal conclusion, and not a factual allegation that Baylor is required to admit or deny.

283.    Baylor denies the allegations in Paragraph 283 of the Complaint.

284.    Baylor denies the allegations in Paragraph 284 of the Complaint.

285.    Baylor denies the allegations in Paragraph 285 of the Complaint.

286.    Bolbocean's allegation in Paragraph 286 of the Complaint is vague and lacks specificity as to what "close contact" refers.  Baylor therefore lacks information or knowledge sufficient to form a belief as to whether any female Baylor instructor was ever individually warned to avoid "close contact" with female students.  Baylor admits that all professors—male and female—are notified of Baylor's policy prohibiting romantic relationships with undergraduate students and other relevant policies.  Baylor denies the remaining allegations in Paragraph 286 of the Complaint.

287.    Baylor lacks information or knowledge sufficient to form a belief as to whether any female Baylor instructor was ever individually warned to leave her office door open when meeting with students, whether those students were female or male.  Baylor denies that there is any formal policy regarding instructors—male or female—leaving their office doors open when meeting with students.

288.    Bolbocean's allegation in Paragraph 288 of the Complaint is vague and lacks specificity as to what "close contact" refers.  To the extent Paragraph 288 of the Complaint alleges that any female instructors were found to have violated Baylor's policy regarding romantic relationships with female undergraduate students and were not subject to discipline, Baylor denies the allegations in Paragraph 288 of the Complaint.

289.    Baylor admits that Bridgwater and all Baylor professors are permitted to cultivate professional and appropriate relationships with both male and female students.

290.    Baylor admits that Bridgwater and all Baylor professors are permitted to have male and female students in their offices with the door closed.

291.    Baylor admits that all professors, male and female, are prohibited from engaging in romantic or sexual conduct with Baylor undergraduate students.  Baylor further admits that all professors, male and female, are prohibited from engaging in a relationship with any graduate student whom they educate, advise, coach, supervise, or evaluate, or whom they have previously educated, advised, coached, supervised, or evaluated, in any way.  Baylor further admits that all professors, male and female, are prohibited from engaging in a gross abuse of trust in a faculty-student relationship or other conduct clearly inconsistent with the standard of conduct generally expected of a teacher in a university sponsored by Baptists.  Baylor denies the remaining allegations in Paragraph 291 of the Complaint.

292.    Baylor denies the allegations in Paragraph 292 of the Complaint.

293.    Baylor admits that all professors, male and female, are prohibited from engaging in romantic or sexual conduct with Baylor undergraduate students.  Baylor further admits that all professors, male and female, are prohibited from engaging in a relationship with any graduate student whom they educate, advise, coach, supervise, or evaluate, or whom they have previously educated, advised, coached, supervised, or evaluated, in any way.  Baylor further admits that all professors, male and female, are prohibited from engaging in a gross abuse of trust in a faculty-student relationship or other conduct clearly inconsistent with the standard of conduct generally expected of a teacher in a university sponsored by Baptists.  Baylor denies that, if female professors violated the above policies, they would not have been subjected to adverse employment actions.

294.    Baylor denies the allegations in Paragraph 294 of the Complaint.

295.    Baylor denies that Bolbocean is entitled to any of the relief requested.

### THIRD CAUSE OF ACTION:
### (VIOLATION OF TEXAS LABOR CODE)

296.    Baylor incorporates by reference its responses to Paragraphs 1 through 295 as if fully set forth herein.

297.    Paragraph 297 of the Complaint is a legal conclusion, and not a factual allegation to which Baylor must admit or deny.

298.    Baylor denies the allegations in Paragraph 298 of the Complaint.

299.    Paragraph 299 of the Complaint is a legal conclusion, and not a factual allegation Baylor must admit or deny.

300.    Baylor denies the allegations in Paragraph 300 of the Complaint.

301.    Baylor denies the allegations in Paragraph 301 of the Complaint.

302.    Baylor denies the allegations in Paragraph 302 of the Complaint.

303.    Bolbocean's allegation in Paragraph 303 of the Complaint is vague and lacks specificity as to what "close contact" refers.  Baylor lacks information or knowledge sufficient to form a belief as to whether any female Baylor instructor was ever individually warned to avoid "close contact" with female students.  Baylor admits that all professors—male and female—are notified of Baylor's policy prohibiting romantic relationships with undergraduate students and other relevant policies.

304.    Baylor lacks information or knowledge sufficient to form a belief as to whether any female Baylor instructor was ever individually warned to leave her office door open when meeting with students, whether those students were female or male.  Baylor denies that there is any formal

policy regarding instructors—male or female—leaving their office doors open when meeting with students.

305.    Bolbocean's allegation in Paragraph 305 of the Complaint is vague and lacks specificity as to what "close contact" refers.  To the extent Paragraph 305 of the Complaint alleges that any female instructors were found to have violated Baylor's policy regarding romantic relationships with female undergraduate students are were not subject to discipline, Baylor denies the allegations in Paragraph 305 of the Complaint.

306.    Baylor admits that Bridgwater and all Baylor professors are permitted to cultivate professional and appropriate relationships with both male and female students.

307.    Baylor admits that Bridgwater and all Baylor professors are permitted to have male and female students in their offices with the door closed.

308.    Baylor admits that all professors, male and female, are prohibited from engaging in romantic or sexual conduct with Baylor undergraduate students.  Baylor further admits that all professors, male and female, are prohibited from engaging in a relationship with any graduate student whom they educate, advise, coach, supervise, or evaluate, or whom they have previously educated, advised, coached, supervised, or evaluated, in any way.  Baylor further admits that all professors, male and female, are prohibited from engaging in a gross abuse of trust in a faculty-student relationship or other conduct clearly inconsistent with the standard of conduct generally expected of a teacher in a university sponsored by Baptists.  Baylor denies the remaining allegations in Paragraph 308 of the Complaint.

309.    Baylor denies the allegations in Paragraph 309 of the Complaint.

310.    Baylor admits that all professors, male and female, are prohibited from engaging in romantic or sexual conduct with Baylor undergraduate students.  Baylor further admits that all

professors, male and female, are prohibited from engaging in a relationship with any graduate student whom they educate, advise, coach, supervise, or evaluate, or whom they have previously educated, advised, coached, supervised, or evaluated, in any way.  Baylor further admits that all professors, male and female, are prohibited from engaging in a gross abuse of trust in a faculty-student relationship or other conduct clearly inconsistent with the standard of conduct generally expected of a teacher in a university sponsored by Baptists.  Baylor denies that if female professors violated the above policies, they would not have been subjected to adverse employment actions.

311.    Baylor denies the allegations in Paragraph 311 of the Complaint.

312.    Baylor denies that Bolbocean is entitled to any of the relief requested.

### FOURTH CAUSE OF ACTION: (BREACH OF CONTRACT)

313.    Baylor incorporates by reference its responses to Paragraphs 1 through 312 as if fully set forth herein.

314.    Paragraph 314 of the Complaint is a legal conclusion and not a factual allegation to which Baylor must admit or deny.

315.    Baylor admits that the SGBH policy includes the quoted language.

316.    Baylor denies the allegations in Paragraph 316 of the Complaint.

317.    Baylor denies the allegations in Paragraph 317 of the Complaint.

318.    Baylor denies the allegations in Paragraph 318 of the Complaint.

319.    Baylor denies the allegations in Paragraph 319 of the Complaint.

320.    Baylor admits that Complainant did not request language accommodations.

321.    Baylor admits that Complainant, like Bolbocean, was able to fully participate in the Title IX process.

322.    Baylor denies the allegations in Paragraph 322 of the Complaint.

323.    Baylor denies the allegations in Paragraph 323 of the Complaint.

324.    Baylor denies the allegations in Paragraph 324 of the Complaint.

325.    Baylor denies the allegations in Paragraph 325 of the Complaint.

326.    Baylor denies that Bolbocean was constructively discharged from his position at Baylor.  Baylor lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 326 of the Complaint.

327.    Baylor admits that the SGBH policy contains the quoted language.

328.    Baylor denies the allegations in Paragraph 328 of the Complaint.

329.    Baylor admits that Bolbocean was not permitted to review the Title IX Office Intake/Checklist form containing the notes from Complainant's intake meeting with Title IX. Baylor denies the remaining allegations in Paragraph 329 of the Complaint.

330.    Baylor denies the allegations in Paragraph 330 of the Complaint.

331.    Baylor denies the allegations in Paragraph 331 of the Complaint.

332.    Baylor denies the allegations in Paragraph 332 of the Complaint.

333.    Baylor denies the allegations in Paragraph 333 of the Complaint.

334.    Baylor denies the allegations in Paragraph 334 of the Complaint.

335.    Baylor denies the allegations in Paragraph 335 of the Complaint.

336.    Baylor denies that Bolbocean was constructively discharged from his position at Baylor.  Baylor lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 336 of the Complaint.

337.    Baylor denies that Bolbocean is entitled to any of the relief requested.

## PRAYER FOR RELIEF

Baylor denies that Bolbocean is entitled to any of the relief requested in his Prayer for Relief (i)-(v).  Baylor denies any and all further allegations not specifically addressed in this answer and denies that Bolbocean has stated a valid claim or is entitled to relief.

## DEFENSES

In asserting the following defenses, Baylor does not admit that the burden of proving the allegations or denials contained in the defenses is upon Baylor; to the contrary, the burden of proving the facts relevant to many of the defenses and the burden of proving the inverse of the allegations contained in many of the defenses is upon Bolbocean.  Moreover, in asserting any defense Baylor does not admit any liability but, to the contrary, specifically denies any and all allegations of liability in the Complaint. Without admitting liability as to any of Bolbocean's causes of action, Baylor asserts the following defenses:

a.      Baylor denies that it discriminated against Bolbocean on the basis of his sex. The actions taken were based on legitimate, non-discriminatory, non-retaliatory and non-pretextual reasons.

b.      Bolbocean fails to properly state certain claims on which relief may be granted.

c.      Title IX does not afford a private action for employment discrimination on the basis of sex in federally funded educational institutions.

d.      To the extent Bolbocean's claims are different from and beyond the scope of the matters alleged in his Charge filed with the EEOC, or any other governmental entity, for which a notice of right to sue has been issued, Bolbocean has failed to exhaust his administrative remedies and cannot pursue such claims.

e.      Bolbocean had and has a duty to mitigate any damages.  Bolbocean's damages, if any, should be reduced by any failure to mitigate damages.

f.      Baylor has, at all times, operated in good faith and under proper anti-discrimination, anti-harassment, and anti-retaliation policies.  Baylor exercises reasonable care to prevent and promptly correct any unlawful behavior.

g.      Bolbocean's claims are barred, in whole or in part, because, even if Bolbocean is able to prove that a prohibited factor motivated Baylor's alleged employment action, which Baylor expressly denies, the same action would have been taken even absent such motivation.

h.      Bolbocean's claims are barred, in whole or in part, because Bolbocean admitted to conduct that was a violation of Baylor's Sexual Conduct Policy, as well as the Policy on Romantic and/or Sexual Conduct with Students and Supervisees, requiring disciplinary action against him.

i.      Bolbocean's claims are barred because any alleged differential treatment of Bolbocean was based on reasonable factors other than sex or protected activity, including business necessity.

j.      Baylor's employment practices have, at all times, been job-related for the positions in question and consistent with business necessity.

k.      Bolbocean waived the right to enforce any contractual obligation against Baylor when he violated Baylor's Sexual Conduct Policy.

l.      Baylor was discharged from performing any alleged contract because Bolbocean repudiated a dependent promise and/or materially breached the contract.

m.      Bolbocean's claims are barred, in whole or in part, by the doctrines of estoppel, acquiescence, and/or unclean hands.

n.      Bolbocean has failed to allege facts that, if proven, would establish the alleged conduct, if any such occurred, was the proximate cause of Bolbocean's damages.

o.      Any losses, damages or other injury allegedly suffered by Bolbocean arising out of Bolbocean's employment with Baylor resulted from Bolbocean's own decisions, actions or omissions.

p.      Any amount that Bolbocean claims is due and owing to him for back pay and/or benefits must be reduced and offset by any amounts that Bolbocean received, earned or could have earned after his resignation from Baylor including, without limitation, any unemployment compensation.

q.      Any amount that Bolbocean claims is due and owing him for lost wages and/or benefits must be reduced to account for any time period for which Bolbocean was unavailable for work.

r.      Bolbocean's damages, if any, are capped by statute.

s.      Bolbocean's claims for punitive damages, if any, are unconstitutional under the due process clause of the Fourteenth Amendment to the United States Constitution and constitute an excessive penalty or fine in violation of the Eighth Amendment to the United States Constitution.

t.      Bolbocean cannot recover punitive damages because Baylor has not engaged in any unlawful practices with malice or with reckless indifference and has not engaged in unlawful discrimination.  Further, Baylor has made a good faith effort to prevent discrimination, harassment, and retaliation in the workplace.

u.      Baylor specifically reserves the right to amend this answer by way of adding additional affirmative defenses as evidence is obtained through future investigation and discovery.

## PRAYER

Defendant Baylor University prays that the Court render judgment in favor of Baylor, dismiss all of Bolbocean's claims with prejudice, and that the Court grant any other relief to which Baylor may be entitled.

Respectfully submitted,

**WEISBART SPRINGER HAYES LLP**
212 Lavaca Street, Suite 200
Austin, Texas 78701
512.652.5780
512.682.2074 fax

By:  /s/ Julie A. Springer
      Julie A. Springer
      Texas Bar No. 18966770
      jspringer@wshllp.com
      Sara E. Janes
      Texas Bar No. 24056551
      sjanes@wshllp.com
      Colleen Murphey
      Texas Bar No. 24102258
      cmurphey@wshllp.com

**ATTORNEYS FOR DEFENDANT BAYLOR UNIVERSITY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record herein by way of:

☐    U.S. Mail, First Class
☐    Certified Mail
☐    Facsimile
☐    Federal Express
☐    Hand Delivery
☒    ECF (electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

on this 14th day of February 2020, to wit:

R. Mark Dietz
DIETZ & JARRARD P.C.
106 Fannin Avenue East
Round Rock, Texas  78664
(512) 244-9314
mdietz@lawdietz.com

Kimberly C. Lau
James E. Figliozzi
WARSHAW BURSTEIN, LLP
575 Lexington Avenue
New York, New York  10022
(212) 984-7700
klau@wbny.com
jfigliozzi@wbny.com

Andrew T. Miltenberg
Stuart Bernstein
Kara L. Gorycki
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York  10001
(212) 736-4500
(212) 736-2260 fax
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
kgorycki@nmllplaw.com

**ATTORNEYS FOR PLAINTIFF**

/s/ Julie A. Springer
Julie A. Springer